JOSEPH P. PERTO, Plaintiff-Appellant, v. BOARD OF REVIEW, Department of Employment Security, *et al.*, Defendants-Appellees.

Second District No. 2—94—0963

Opinion filed August 3, 1995.—Rehearing denied September 15, 1995.

Lawrence A. Stein and Eric J. Lieberman, of Huck, Bouma, Martin, Charlton & Bradshaw, P.C., of Wheaton, for appellant.

James E. Ryan, Attorney General, of Chicago (Claudia E. Sainsot, Assistant Attorney General, of counsel), for appellees.

Dennis A. Rendleman, Athena T. Taite, and David A. Decker, all of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Joseph Perto, appeals from an order of the circuit court of Du Page County which affirmed a decision of the Board of Review (Board) of the Illinois Department of Employment Security (Depart-

ment). The Board's decision denied plaintiff unemployment compensation benefits on the basis of misconduct under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 1992)).

On appeal, plaintiff contends that: (1) the trial court erred by applying an incorrect standard of review; (2) plaintiff was not guilty of misconduct under section 602(A); (3) the trial court erred by not remanding for the taking of additional evidence; and (4) the trial court's order and the Board's decision are void because an agent representing the employer was guilty of the unauthorized practice of law. We granted leave to the Illinois State Bar Association to file an *amicus curiae* brief in support of plaintiff's position on the question of the unauthorized practice of law.

The relevant facts are as follows. Plaintiff was employed by Emro Marketing Company (Emro) for about $1^1/_2$ years until January 19, 1993. Emro operated a number of gas stations in the Chicago area. In addition to selling gas, the stations also sold cigarettes and sundries. Plaintiff managed one of Emro's gas stations. Plaintiff's specific duties included: scheduling employees, ordering and accounting for inventory, transferring the store receipts to the bank, and working the cash register.

Plaintiff's supervisor was Ken Brickman, a district manager for Emro. On January 19, 1993, during a visit to the gas station managed by plaintiff, Brickman fired plaintiff.

On January 25, 1993, plaintiff applied for unemployment benefits through the Department. On one of the forms plaintiff completed as part of his application for benefits, plaintiff stated that he had been discharged because of "uncontrollable shortages from store audits." On February 8, 1993, during an interview with a Department representative, plaintiff reiterated the same reason for his discharge and added that he had received a prior warning regarding the shortages "a couple of months before."

On February 8, 1993, Emro, through an authorized agent, the Frank Gates Service Company (Gates), completed a form and sent it to the Department. The Department had sent the form to Emro to notify Emro of plaintiff's claim for benefits and to determine whether Emro wished to protest the claim. The returned form indicated that Emro wished to protest plaintiff's claim for unemployment benefits because plaintiff had been discharged for neglect of duties.

The Department mailed a letter dated February 13, 1993, to Emro in care of Gates. The letter notified Emro that an adjudicator had determined that plaintiff was eligible for unemployment benefits because his discharge was not for misconduct. The letter advised Emro that it had 30 days to appeal the determination.

Through Gates, Emro replied by a letter dated March 3, 1993. The letter stated that Emro disagreed with the determination that plaintiff was eligible for unemployment benefits and that plaintiff was not discharged for an inability to perform his duties but rather for neglecting his duties. The letter detailed specific instances of plaintiff's alleged neglect of his duties which included: (1) at least six instances of cash shortages and one instance of a cash overage between August 10, 1992, and January 19, 1993, resulting in a total shortage of $5,363.41 since August 1992; (2) plaintiff's absence from work without approval on January 14, 1993; (3) plaintiff's failure to make bank deposits on the day they were received; and (4) plaintiff's failure to perform weekly commodity counts. The letter sought a redetermination of plaintiff's eligibility or a telephone hearing on the matter.

On May 21, 1993, through one of its referees, the Department conducted a telephone hearing on the matter. Plaintiff testified for himself and Brickman testified for Emro. Brickman's testimony tended to show that plaintiff was remiss in his duties in the same areas that the March 3, 1993, letter from Gates had addressed, *i.e.*, failure to perform weekly commodity counts; cash shortages; failure to make daily bank deposits; and an unapproved absence from work on January 14, 1993. Brickman also testified that on November 30, 1992, he gave plaintiff a disciplinary notice for cash shortages.

Plaintiff admitted that he had failed to make timely bank deposits "a couple times." Plaintiff explained that there were a few times when he was not relieved by another employee in time to make the bank deposit until late in the day. Plaintiff stated, "I wasn't going to go later at night." Plaintiff also explained that on two days specifically mentioned by Brickman as days that he failed to make deposits, January 13 and 14, 1993, the bank was closed because of a computer installation. Plaintiff testified that he had informed Brickman of the bank being closed on those days.

With respect to his absence from work on January 14, 1993, plaintiff testified that he attempted to contact Brickman by pager early in the morning on January 14, 1993, but did not receive a response from Brickman. Plaintiff testified that he was absent because he had hurt his back and needed to go to the doctor that day. He went to work from 9 a.m. until 11 a.m. to allow an employee to take his wife to work. Plaintiff acknowledged that he did not attempt to call Brickman to report his absence after the initial call. When the referee asked plaintiff why he did not try to contact Brickman later in the day, plaintiff responded that he had informed the employee to have Brickman call plaintiff at home if Brickman called the gas sta-

tion. Plaintiff acknowledged that he was aware of his responsibility to inform Brickman of his absence from work. Plaintiff also testified that there had been problems in the past contacting Brickman by pager.

As to the cash shortages, plaintiff claimed that they were out of his control. Plaintiff testified that he was not taking merchandise and did not know how it was taken. Plaintiff suggested that a cash register malfunction about one month before his termination could account for some of the shortages.

Plaintiff acknowledged that he had not performed weekly commodity counts. He stated that he had done them at first, but toward the end of his employment he had not done them. He stated that he could not straighten out the count after the cash register malfunction.

Brickman admitted that the cash register occasionally malfunctioned and stated that such a malfunction might account for an inventory shortage, but not for a substantial cash shortage.

The referee's written decision dated May 25, 1993, set aside the adjudicator's determination of eligibility and disqualified plaintiff from receiving unemployment benefits under section 602(A) for misconduct in knowingly violating company rules. The referee specifically found that plaintiff was discharged by Emro "because he violated rules regarding banking procedures and the company attendance policy." The referee also specifically found that Brickman's testimony was credible.

Plaintiff filed a timely notice of appeal with the Board. Attached to the notice of appeal was a typewritten letter to the Board signed by plaintiff. In the letter, plaintiff stated that he was discharged because of uncontrollable merchandise shortages and claimed that he had not been notified of any other reason for his discharge.

The letter also included the following: plaintiff's claim that he made "four or five" additional attempts to call Brickman on the day plaintiff was absent from work; plaintiff's statement that other managers had complained about Brickman not returning their pages; the names and phone numbers of two such managers; more detail about two occasions when plaintiff failed to make timely bank deposits; plaintiff's claim that Brickman had told plaintiff not to take the money to the bank after 5 p.m. for security reasons; plaintiff's claim that Emro had not sufficiently trained plaintiff to do the required commodity counts; and plaintiff's claim that changing plaintiff to a larger gas station was a plot to set him up for failure due to a weight problem.

The Board's decision, dated November 16, 1993, affirmed the

referee's decision. The decision stated that the record was adequate and that the further taking of evidence was unnecessary.

Plaintiff filed a timely complaint for administrative review in the circuit court. At a hearing, the trial court focused on the credibility of Brickman and plaintiff. The court noted that the referee found that Brickman's testimony was credible. The court stated that it drew an inference from this that any conflicting testimony by plaintiff was not credible. The court also stated that the credibility of the witnesses in an administrative review was for the agency to determine.

The trial court concluded that the Board's decision was not against the manifest weight of the evidence. The court therefore entered an order affirming the Board's decision. Plaintiff's appeal followed.

On appeal, plaintiff first contends that the trial court erred by using an incorrect standard of review. Plaintiff acknowledges that the against-the-manifest-weight-of-the-evidence standard used by the court is appropriate for questions of fact. However, plaintiff argues that the critical determination in this case was whether plaintiff's actions constituted misconduct and that such a determination is a question of law which should have been decided *de novo* by the trial court. Plaintiff asserts that because the trial court applied an incorrect standard of review its judgment should be vacated and the matter remanded for determination under the *de novo* standard.

It is well settled that an administrative agency's findings and conclusions of fact are *prima facie* true and correct. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513; 735 ILCS 5/3—110 (West 1992).) A reviewing court should not reweigh the evidence, and its function is limited to determining whether the decision of the administrative agency was against the manifest weight of the evidence. (*Jackson*, 105 Ill. 2d at 513.) An administrative agency's decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident. (*Hoffman v. Lyon Metal Products, Inc.* (1991), 217 Ill. App. 3d 490, 497.) A reviewing court is not bound to give an agency the same deference regarding its conclusions of law. *Hoffman*, 217 Ill. App. 3d at 497.

■ Here, plaintiff argues that the Board's conclusion that plaintiff's conduct constituted misconduct under section 602(A) was a conclusion of law and therefore was subject to *de novo* review. Plaintiff asserts that the trial court's statements that credibility was an issue and that the Board's decision was not against the manifest weight of the evidence demonstrate that the court failed to determine as a matter of law whether plaintiff's conduct constituted misconduct under section 602(A). We do not agree.

Our review of the record reflects that both parties thoroughly argued the issue of whether the facts relied on by the Department were sufficient to satisfy the legal definition of misconduct. The fact that the trial court did not expressly comment that it was conducting a *de novo* examination of the Board's conclusions of law does not persuade us that it failed to consider that issue. The court was presented with the section 602(A) definition of misconduct and considered the opposing arguments regarding whether the elements of that definition were satisfied. The court's comment that the Board's decision was not against the manifest weight of the evidence, also an essential determination, is no indication that the contested issue regarding the Board's legal conclusion was ignored. Accordingly, we reject plaintiff's claim that the trial court applied an incorrect standard of review.

Plaintiff next contends that his actions did not constitute misconduct under section 602(A) of the Act. Under section 602(A), an individual who is discharged for "misconduct" connected to his work is ineligible for unemployment benefits. (820 ILCS 405/602(A) (West 1992).) Section 602(A) defines misconduct as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 1992).

Thus, an employee's actions constitute misconduct only if the employee (1) engaged in deliberate and willful conduct; (2) which violated a reasonable rule or policy governing the employee's work performance; and (3) either (a) harmed the employer or another employee, or (b) was repeated after a warning or explicit instruction to the contrary. *Garner v. Department of Employment Security* (1995), 269 Ill. App. 3d 370, 374.

Initially, we note that the referee in this case found that plaintiff violated rules regarding banking procedures and an attendance policy. On appeal, plaintiff has limited his arguments regarding misconduct to those two questions. However, there were two other bases of potential misconduct by plaintiff. Those bases were plaintiff's actions with respect to cash shortages and commodity counts. These questions were addressed at the hearing and argued by both parties in the trial court. Further, the Department has argued on appeal that plaintiff's actions with respect to cash shortages and commodity counts constituted misconduct warranting his termination. Plaintiff has filed no reply brief in response to these arguments. We are not

limited to the findings made by the referee because it is the Board's decision, not the referee's, which is reviewed by the court. (*Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723.) The Board based its decision on the entire record, which encompasses all four areas of potential misconduct by plaintiff. Consequently, we may review any or all of the four bases for potential misconduct.

We will first determine whether plaintiff's actions related to commodity counts constituted misconduct. The commodity counts were a form of inventory for the purpose of determining, in part, whether there were any shortages in the inventory and cash.

Plaintiff testified that he performed commodity counts and logged them in a book when he first began working for Emro. However, plaintiff admitted that he stopped performing the commodity counts at some point during his employment. Plaintiff testified that he decided it was useless to continue doing the commodity counts after the cash register broke because the counts were not resolving the shortages.

Brickman testified that even if the cash register was broken, it would not account for all of the discrepancies in the inventory count and cash shortages. Brickman testified that plaintiff could have manually recorded sales while the cash register was broken and then rung them back into the register when it was working. This would have allowed monitoring of the shortages.

■ Based on this record, it is readily apparent that plaintiff deliberately and willfully violated a reasonable rule related to his work performance and that the violation of this rule harmed his employer. Plaintiff admitted he was aware of the rule requiring weekly commodity counts which was intended to help his employer determine whether there were shortages in inventory or cash. Plaintiff performed the commodity counts for a while and then stopped doing them even though he was aware that his employer was concerned about cash shortages. Although he attributed some of his failure to make the commodity counts to a malfunctioning cash register, plaintiff did not testify that he notified Brickman of this problem. This shows a deliberate and willful violation of his employer's rule requiring weekly commodity counts. Plaintiff denied any direct involvement in or control over the cash shortages; however, his actions in not performing the commodity counts made his employer's resolution of the ongoing cash shortage problem more difficult. Thus, plaintiff's failure to perform the commodity counts harmed his employer.

For these reasons, we determine that plaintiff's actions with respect to the commodity counts satisfied all three of the elements nec-

essary for a finding of misconduct under section 602(A). Consequently, the Board did not err when it affirmed the referee's decision that plaintiff's actions constituted misconduct under section 602(A) of the Act. Because this determination regarding commodity counts is dispositive, we need not determine whether plaintiff's other actions also constituted misconduct.

Accordingly, it will also be unnecessary for us to consider plaintiff's argument that the court erred in failing to remand his case to the Board for the taking of additional evidence on the question of whether he paged Brickman to advise Brickman of his absence from work.

Plaintiff next contends that Gates' representation of Emro before the Department constituted the unauthorized practice of law. Plaintiff argues that because of this unauthorized practice of law the trial court order and the Board's decision are void.

The legislature has authorized the representation of participants in proceedings before the Department. Section 806 of the Act provides that "[a]ny individual or entity in any proceeding before the Director or his representative, or the Referee or the Board of Review, may be represented by a union or any duly authorized agent." 820 ILCS 405/806 (West 1992).

However, in Illinois, only licensed attorneys are permitted to practice law. (705 ILCS 205/1 (West 1992).) The legislature has no authority to grant a nonattorney the right to practice law even if limited to practice before an administrative agency. (*People ex rel. Chicago Bar Association v. Goodman* (1937), 366 Ill. 346, 352.) The ultimate authority to regulate and define the practice of law rests with the supreme court. *Goodman*, 366 Ill. at 349.

There is no single satisfactory mechanistic formulation or definition of the practice of law. (*In re Discipio* (1994), 163 Ill. 2d 515, 523.) We are unaware of any Illinois case which has determined whether representation by a nonattorney before the Department constitutes the practice of law.

In this case, the conduct in question was as follows. After making an initial determination that plaintiff was eligible for unemployment benefits, the Department sent Emro a form letter. The form letter notified Emro of plaintiff's apparent eligibility for unemployment benefits and advised Emro that if it wished to protest plaintiff's claim it should check one or more of the boxes on the form which indicated various reasons for the protest. The form letter also advised Emro to provide a statement of facts in support of its protest. Emro responded through its authorized agent, Gates. One of Gates' employees, a nonattorney, checked the "other" box on the form and wrote in the

statement of facts section that plaintiff was discharged for neglect of duties.

The Department subsequently sent another letter to Emro advising it that plaintiff had again been determined eligible for unemployment benefits. The letter explained that plaintiff had been determined eligible because he was discharged for being unable to meet Emro's standards or job requirements but not for misconduct. The letter advised Emro it had the right to appeal the determination.

Emro again responded through its authorized agent, Gates. A Gates' employee, not an attorney, sent a letter to the Department. The letter stated that Emro disagreed with the Department's determination and requested a redetermination or a hearing. The letter repeated Emro's position that plaintiff was discharged for neglecting his duties and then went on to provide factual details of this alleged neglect.

In *Goodman*, our supreme court determined whether actions by a nonattorney with respect to workers' compensation claims before the Industrial Commission constituted the practice of law. Goodman, a nonattorney, carried on a business in which he widely advertised himself as an agent who could handle workers' compensation claims for injured workers. (*Goodman*, 366 Ill. at 348.) Goodman's activities on behalf of his clients included: attempts to negotiate settlements with employers and insurance carriers; filing petitions before the Industrial Commission; appearing at Industrial Commission hearings where he presented evidence; and pursuing appeals taken to the Industrial Commission. 366 Ill. at 348.

The court noted that it had not adopted an all-inclusive definition of the practice of law. (366 Ill. at 351.) It considered various substantive definitions and concluded that it was the character of the act done, and not the place it was done, that was the decisive factor in determining whether it constituted the practice of law. (366 Ill. at 357.) The court held that Goodman's actions constituted the practice of law and were therefore improper. (366 Ill. at 357.) The court based its decision, in part, on the complexity of many legal and factual questions in workers' compensation cases. 366 Ill. at 354-56.

Taking these principles into account, we conclude that Gates' actions in this case did not constitute the practice of law. The acts were simple, fact-based responses to determinations that plaintiff was eligible for unemployment benefits by the Department. Gates' participation occurred while the Department was still investigating whether there was a basis for reassessing its decision. Gates did not participate in the hearing before the referee where the reassessment occurred.

We recognize that some cases have stated that the practice of law includes the giving of advice or the rendition of any sort of service requiring "any degree of legal knowledge or skill." (See, *e.g.*, *People ex rel. Chicago Bar Association v. Barasch* (1950), 406 Ill. 253, 256; *Lozoff v. Shore Heights, Ltd.* (1976), 35 Ill. App. 3d 697, 700.) However, in this case, no legal knowledge or skill was necessary for Gates to submit the information in response to the Department's letters to Emro. No legal advice was given. Rather, in response to investigatory probes by the Department, Gates simply disagreed with the Department's determinations and presented a factual basis for the disagreement. Under the above principles, we cannot say that Gates' actions in providing this information constituted the practice of law.

In support of their positions, the parties each have cited a different foreign jurisdiction case in which a court determined whether actions by nonattorneys before State agencies charged with administering unemployment insurance programs constituted the practice of law. Plaintiff cited *Reed v. Labor & Industrial Relations Comm'n* (Mo. 1990), 789 S.W.2d 19. The Department cited *Henize v. Giles* (1986), 22 Ohio St. 3d 213, 490 N.E.2d 585. Bearing in mind the foregoing principles, we elect to follow in part the reasoning of the Ohio Supreme Court in *Henize v. Giles* (1986), 22 Ohio St. 3d 213, 490 N.E.2d 585.

In *Henize*, the court decided whether the representation of an employer by an actuarial firm, through a nonattorney, at a benefits hearing before a referee of the Ohio Unemployment Compensation Board of Review constituted the unauthorized practice of law. (*Henize*, 22 Ohio St. 3d at 215, 490 N.E.2d at 587.) At the hearing, the nonattorney presented the employer's evidence, questioned witnesses, and made a closing statement. (22 Ohio St. 3d at 214, 490 N.E.2d at 586.) The court noted that an agency rule allowed nonattorney representation during the hearing. (22 Ohio St. 3d at 216-17, 490 N.E.2d at 588.) The court stated that it had the power to declare the rule void insofar as it allowed the practice of law by nonattorneys but declined to do so. 22 Ohio St. 3d at 218, 490 N.E.2d at 589.

The *Henize* court based its decision on a number of factors. These factors generally emphasized the relative simplicity and informality of proceedings before an agency charged with determining eligibility for unemployment compensation benefits so that the formal presentation of legal arguments is largely unnecessary. *Henize*, 22 Ohio St. 3d at 215-17, 490 N.E.2d at 587-88.

In the present case, the simplicity of the procedure relative to the stage of Gates' involvement is also evident. The act of writing a letter in response to the Department's inquiry regarding the circumstances

of plaintiff's termination is a relatively uncomplicated function which does not require legal training or expertise.

In this case, Gates' correspondence with the Department ended prior to any hearing regarding plaintiff's eligibility. Thus, there is even less cause to be concerned about Gates' activities in this case than the representation in *Henize.*

Based on the foregoing, we hold that Gates' correspondence with the Department in behalf of Emro did not constitute the practice of law. Our holding is a narrow one confined to the facts of this case. We specifically do not reach the question of whether Gates' actions would have constituted the practice of law if, as in *Goodman,* Gates had participated in the hearing.

Nor do we speculate, as the *amicus* urges us to do, at what point, if any, in the Department's administrative proceedings the participation of nonattorneys constitutes the unauthorized practice of law. Plaintiff argued that Gates' actions constituted the unauthorized practice of law. We have directly answered that question. An *amicus* takes the case as he finds it with the issues framed by the parties. (*People v. P.H.* (1991), 145 Ill. 2d 209, 234.) Consequently, we need not determine whether there is a point in the administrative proceedings where participation by a nonattorney constitutes the unauthorized practice of law.

Based on the foregoing, we affirm the trial court order affirming the Board's decision.

Affirmed.

THOMAS and RATHJE, JJ., concur.