SARAH HAMM, Petitioner-Appellee, v. THE TOWNSHIP OFFICERS OF THE TOWNSHIP OF BREMEN ELECTORAL BOARD *et al.*, Respondents-Appellees (George Murphy, Respondent-Appellant).

First District (6th Division)    No. 1—09—0656

Opinion filed April 17, 2009.

Michael J. Kasper, of Chicago, for appellant.

Cathe R. Evans Williams, of Woods & Evans, LLC, of Matteson, for appellee Sarah Hamm.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Objector, George Murphy, filed an objection to Bremen Township supervisor candidate Sarah Hamm's timely filed nominating petition. The candidate filed a motion to dismiss objector's petition as untimely, which the Bremen Township Electoral Board denied. Based on the merits of the objector's petition, the Board determined that the candidate's nominating petition failed to meet the minimum number of signatures required by law for placement on the April 7, 2009, ballot for the office of township supervisor and struck her name from the ballot. The candidate appealed the finding of the Board to the circuit court, which reversed the Board's finding that the objection was timely filed and ordered the candidate's name placed on the April 7 ballot. The objector appeals the judgment of the circuit court claiming that the Board's decision was not clearly erroneous. For the reasons that follow, we reverse the judgment of the circuit court and affirm the decision of Board.

## BACKGROUND

On January 26, 2009, Sarah Hamm, an independent candidate for the office of supervisor of Bremen Township (the candidate), timely filed a nominating petition bearing over 1,000 signatures of purported registered voters in Bremen Township. On Monday, February 2, 2009, five days following the filing of the nominating petition, George Mur-

phy (the objector) attempted to file his objection to the candidate's nominating petition alleging that the petition did not contain the requisite number of signatures for nomination to that office. It is undisputed that the regular office hours of the township clerk, in whose office the nominating petition and objection must be filed, are from 9 a.m. until 4 p.m., Monday through Friday. The objector was present in the township clerk's office filing other objections but left to attend to other business. He returned to the township clerk's office at approximately 4:30 p.m. and found the doors locked and the office closed.

The objector began to walk toward the parking lot where he encountered the township clerk and another individual. After a short period of time, the three men returned to the township office and the clerk opened the office, allowed the objector entrance and file-stamped the objection at approximately 4:45 p.m.[1] The candidate filed an amended motion to strike and dismiss the objection claiming, among other things, that the objector did not file it in a timely manner because the clerk's timestamp reflects a time after regular business hours on the fifth day following the filing of nominating petitions.

A hearing was commenced on February 7, 2009, and reconvened on February 27, 2009, before the Bremen Township Electoral Board, consisting of three township officers, including the township clerk. At the hearing, the candidate furnished the Board with the affidavit of township employee Patricia Grabbs, who swore that she was present in the township clerk's office and locked the doors at 4:10 p.m. on Monday, February 2, 2009. She subsequently left the office at 4:30 p.m. An affidavit from John James Kraus, the township highway commissioner, stated that he was present in the locked township office at approximately 4:40 p.m. when the objector returned. The objector could not enter the office because the doors were locked. Kraus told him that the office was closed and the objector returned to the parking lot. At approximately 4:45 p.m., Kraus heard the voices of the township clerk and another individual, named Rondal Jones, in the township office. The clerk, Jones and the objector had entered through the back door of the township office. Kraus also attested that the township office had closed at 4 p.m. for at least three years and nine months.

---

[1]The timestamp issued by the township clerk's office only displays the hour of the day and quarter hour marks between the hours. The timestamp on the objection is marked after the 4 o'clock hour, between the second and third quarter hour marks.

For purposes of the candidate's motion to dismiss, the Board accepted as true all of the candidate's allegations. Relying on section 10—8 of the Election Code (the Code) (10 ILCS 5/10—8 (West 2006)), which provides that objections to the nominating petitions must be made within five business days after the last date for filing of the nominating papers, the Board denied the candidate's motion to dismiss. The Board held that the Code only requires that the office of an election authority be open for at least seven hours to be considered a "business day" to the Code and it does not require that the office close at a certain time or that the objection be filed only during regular business hours. The Board ruled that a "business day" could be anytime within the 24-hour period on a day that the office is opened to the public for at least seven hours. Alternatively, the Board analogized the filing of objections to the filing of petitions, reasoning that because the Code specifically requires an election office to remain open until 5 p.m. on the day nominating petitions are due, an objector might be treated unfairly if he had one hour less to file objections because the township office closed at 4 p.m.

The candidate appealed the decision to the circuit court pursuant to section 10—10.1 of the Code complaining that the Board's finding that a "business day" can be the 24-hour period from 12 a.m. to 11:59 p.m. on any day that the election office is open to the public for at least seven hours was clearly erroneous and a tortured interpretation of the Code. On March 13, 2009, the circuit court agreed, holding that the township office closed at 4 p.m. and was not open to the public when the township clerk accepted the objection. Therefore, despite the timestamp indicating that the objection was filed at approximately 4:45 p.m. on February 2, 2009, the circuit court found the objection was not timely filed and reversed the Board, finding that it should have granted the candidate's motion to dismiss. The objector filed a timely notice of appeal on March 16, 2009, and moved to expedite consideration of this matter in light of the April 7, 2009, election. We granted the objector's motion to expedite and filed our decision reversing the circuit court and affirming the Board on March 31, 2009, with an opinion to follow.

## ANALYSIS

### I. Standard of Review

The Illinois Supreme Court has "identified three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law, and mixed questions of fact and law." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008), citing *City of Belvidere*

*v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 203-04 (1998). " '[T]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law.' " *Cinkus*, 228 Ill. 2d at 210, quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board*, 216 Ill. 2d 569, 577 (2005), citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). A reviewing court is to take an administrative agency's findings and conclusions on questions of fact as *prima facie* true and correct, and when examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Rather, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence, bearing in mind that an administrative agency's factual determinations are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210-11, citing *City of Belvidere*, 181 Ill. 2d at 204. However, "an agency's decision on a question of law is not binding on a reviewing court." *Cinkus*, 228 Ill. 2d at 210, citing *City of Belvidere*, 181 Ill. 2d at 205, and *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994).

Our supreme court has recently reiterated that "[m]ixed questions of fact and law 'are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' " *Cinkus*, 228 Ill. 2d at 211, quoting *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). In *Cinkus*, the court explained that an administrative agency's decision will be deemed "clearly erroneous" when the reviewing court is left with the " ' "definite and firm conviction that a mistake has been committed." ' " *Cinkus*, 228 Ill. 2d at 211, quoting *AFM Messenger*, 198 Ill. 2d at 391-95, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). We further note that where a circuit court reviews an electoral board's decision pursuant to section 10—10.1 of the Code, this court reviews the decision of the board, not the court. *Cinkus*, 228 Ill. 2d at 212; *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873 (2007); *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 841 (2002).

Here, the parties concede, and we have determined, that the appropriate standard of review is the "clearly erroneous" standard ap-

plicable to questions of mixed fact and law. For purposes of the candidate's motion to dismiss, the facts presented to the Board by the candidate were taken as true and, therefore, are not in dispute. Furthermore, both parties agree on the applicable sections of the Code relative to the matter before this court. The only question before us is whether the objection was timely filed under the undisputed facts of this case.

## II. Timeliness of the Objection

Section 10—8 of the Code reads, in pertinent part:

"Certificates of nomination and nomination papers, and petitions to submit public questions to a referendum, being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question ***[.]" 10 ILCS 5/10—8 (West 2006).

A "business day" is defined by section 1—3(22) of the Code as:

"any day in which the office of an election authority, local election official or the State Board of Elections is open to the public for a minimum of 7 hours." 10 ILCS 5/1—3(22) (West 2006).

Section 1—4 of the Code states:

"In any case in which this Act prescribes a period of time within which petitions for nomination must be filed, the office in which petitions must be filed shall remain open for the receipt of such petitions until 5:00 P.M. on the last day of the filing period." 10 ILCS 5/1—4 (West 2006).

There is no dispute that the last day for filing objections for the nominating petition at issue here was February 2, 2009. There is also no question that the objection was accepted by the township clerk between 4:30 p.m. and 4:45 p.m. on February 2, 2009, and that his office was the proper office in which to file such an objection. The candidate's sole contention is that the township clerk should have closed at the time published on the office door and in its brochures and should not have accepted the objection after 4 p.m. because the office was no longer "open to the public" as defined by section 1—3(22) of the Code. We disagree and find no prohibition against a township clerk electing to remain open beyond published business hours to accept submissions on the day of a filing deadline.

In support of her position, the candidate points to the timestamp that shows a time between 4:30 and 4:45 p.m. on February 2, 2009, which she contends is long after normal business hours. However, the candidate does not cite to any statutory authority requiring the township clerk to close at any given time. The only statutory mandate in

this case with regard to the time in which the election office is to remain open is a minimum of seven hours as required in section 1—3(22) of the Code. Furthermore, we do not read any statutory authority cited by either party as requiring the township clerk's office to close at the time published on its doors or in its brochures.

In our view, we find *Welch v. Educational Officers Board for Proviso High School District 209*, 322 Ill. App. 3d 568 (2001), to be instructive on issue before us. Although the *Welch* case dealt with nominating petitions rather than objections, we find it to be analogous to this case. In *Welch*, potential candidates for the district school board filed nominating petitions on the day of the filing deadline shortly after 5 p.m., the regular business hours published to the general public. *Welch*, 322 Ill. App. 3d at 571. The school board secretary refused to certify the nominating petitions or place the candidates on the ballot because he found the petitions untimely due to the fact that they bore a timestamp beyond the regular hours of the office in which the parties were required to file. One of the questions we addressed in *Welch* was, what is the time frame within which nomination papers can be filed? In response to the school board secretary's argument in *Welch* that accepting petitions after 5 p.m. was untimely, we stated:

> "Under section 9—10 of the School Code, 'petitions for the nomination of members of a board of education' are to be filed 'within the time provided for by the general election law.' [Citation.] The time of day for filing is provided in section 1—4 of the Election Code, which as noted states that 'the office in which petitions must be filed shall remain open for the receipt of such petitions until 5:00 P.M. on the last day of the filing period.' [Citation.] On its face section 1—4 states that the office must remain open until 5 p.m., but there is no requirement that the office must close at that time. Thus on its face section 1—4 merely purports to provide a floor but not a ceiling to limit the time during which an office may remain open after 5 p.m." (Emphasis omitted.) *Welch*, 322 Ill. App. 3d 574-75.

Recognizing that the most reliable indicator of legislative intent is the language of the statute, which is given its plain and ordinary meaning *(First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1058-59 (2000)), and acknowledging that a court may not depart from plain language of the statute by reading into it limitations that the legislature did not express *(Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997)), we further held in *Welch* that:

> "the District's administrative office remained open after 5 p.m. on January 23, 2001, as is evidenced by the time-stamps on the receipts for plaintiffs' nomination papers. As noted, the Election

Code requires only that the appropriate office be open *'until* 5:00 P.M. on the last day of the filing period' (emphasis added) [citation]. Since there is no language in the Election Code which states that nomination papers must be filed by 5 p.m. on the last day for filing, we conclude that plaintiffs' nomination papers here were filed 'within the time provided for by the general election law.' [Citation.]" (Emphasis omitted.) *Welch*, 322 Ill. App. 3d 575. Similarly, we find that section 1—3(22) is the only relevant part of the Code that speaks to the hours in which the election office is to remain open to be considered a business day. Section 1—3(22) only requires that the election office be open for seven hours, but it does not mandate any specific hours, only the minimum number of hours. The fact that the township clerk accepted the objector's petition and stamped it as received on February 2, 2009, at approximately 4:45 p.m., shows that the office remained "open to the public" for filing and objector's petition was in fact filed on the fifth day following the relevant nominating petitions.

As did the school board secretary in *Welch*, the candidate in the instant case relies on *Daniels v. Cavner*, 404 Ill. 372 (1949), and *McReynolds v. Hartley*, 251 Ill. App. 3d 1038 (1993), where the petitioners in those cases were found to have filed untimely petitions. However, the candidate's reliance on these cases is misplaced. In *Daniels* the candidates for certain elected offices brought their nominating petitions to the city clerk's residence at around midnight on the last day for filing. The clerk told the appellees that they were too late, but he still took the papers and made a notation that they had been left with him after midnight and on *the following day*. The candidates sought a writ of *mandamus* compelling the clerk to print their names on the ballot for the city election. The trial court granted the writ, but the supreme court reversed, holding that the "determinative" issue was "the propriety of filing nomination papers at the clerk's residence rather than his office." *Daniels*, 404 Ill. at 375. The court noted that the candidates had not "attempted to file their petitions at the clerk's office on the day in question either before or after the normal closing hour." *Daniels*, 404 Ill. at 379.

In *McReynolds*, the petitioners filed objections to the nomination papers of several party affiliated candidates for various offices in Lockport Township, but the electoral board denied the objections. The petitioners then filed a petition for judicial review of this decision. The petition for judicial review was filed by the petitioners' attorney, who arrived at the office of the clerk of the circuit clerk after 4:30 p.m. on the last day for filing their petition. A deputy clerk refused to accept the petition telling counsel that state law prevented her from taking

any document for filing after 4:30 p.m. *The petition was filed the next day*, and the trial court dismissed it as untimely. The appellate court affirmed, noting that it was undisputed that the clerk's official office hours "end[ed] at 4:30 p.m. on each business day." *McReynolds*, 251 Ill. App. 3d at 1040. We further held in *McReynolds* that the *deputy* clerk had no independent authority to modify the rules properly implemented by the clerk and it was not improper for the deputy to refuse to accept the late petition when it was received after the hours set by the clerk. *McReynolds*, 251 Ill. App. 3d at 1041-42.

Contrary to the candidate's assertion that *Daniels* and *McReynolds* control in this case, we point out that both submissions in those cases were received on the business day following the deadline for filing. The objector's petition in this case bears a timestamp of February 2, 2009, the final day on which objections were to be filed. Moreover, the candidate's attempt to distinguish *Welch* on the facts is unavailing. The candidate takes issue with the fact that candidates in *Welch* were stamped less than 10 minutes after 5 p.m. and the objector here was stamped more than 30 minutes after 4 p.m. Also, the fact that the clerk returned to his office from the parking lot to accommodate the objector after locking the office is also very troubling to the candidate. We, however, find these distinctions to be irrelevant considering that the Code does not provide a "floor" or a "ceiling" time in which the office must open and close, but simply states the minimum number of hours. In addition, it is silent as to when an elected official responsible for accepting objector's petitions is allowed or prohibited from maintaining extended hours. This is not to say that we are not mindful of the political manipulation that might occur in elections and may arise under similar circumstances. However, there is no legitimate evidence or properly founded allegations in this case that any such mischief occurred here and we will not assume such impropriety based on the record before us.

Relative to the objector's petitions, the relevant statutes are silent on the specific hours in which the proper office is to open and close. The only mandate is that a business day is "any day in which the office of an election authority, local election official or the State Board of Elections is open to the public for a minimum of 7 hours." Even though the normal hours of the township clerk's office were 9 a.m. to 4 p.m., there is nothing to suggest that the township clerk was prohibited from extending his hours or reopening his office to accommodate a voter on the day of a filing deadline. We therefore hold that the Board's decision was not clearly erroneous and that the objector's petition was timely filed.

836

## CONCLUSION

For the foregoing reasons, we hold that the Board's finding that the objector's petition was timely filed was not clearly erroneous. Accordingly, the judgment of the circuit court is reversed and the decision of the Board striking the candidate's name from the April 7, 2009, ballot is affirmed.

Circuit court reversed; Electoral Board of Bremen Township affirmed.

JOSEPH GORDON and CAHILL, JJ., concur.