ELLEN GRAFNER, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—08—1858

Opinion filed August 6, 2009.

O'BRIEN, J., specially concurring in part.

Lonny Ben Ogus, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Rachel Murphy, Assistant Attorney General, of counsel), for appellees.

Jack C. Carey and Charles J. Northrup, both of Springfield, for *amicus curiae* Illinois State Bar Association.

Douglas A. Darch and Julie S. Lee, both of Seyfarth Shaw LLP, of Chicago, for other *amici curiae*.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Ellen Grafner appeals the trial court's decision affirming the decision of the Board of Review (Board) of the Illinois Department of Employment Security (Department) that denied Grafner unemployment compensation benefits under section 601(A) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2004)) relating to her prior employment at defendant St. Bartholomew parish (the Parish). Grafner first contends on appeal that St. Bartholomew's nonattorney representative and employee engaged in the unauthorized practice of law during the Department's administrative hearing by examining and cross-examining witnesses and making a closing remark. Grafner also claims that Father Malave's testimony on behalf of St. Bartholomew was not credible, considering no written agreement existed that Grafner was hired to work until June 30, 2007, he never contacted Grafner when she did not appear for work after January 7, 2007, and he still hoped that Grafner would act as the Parish's interim musician even though a member of the choir complained about Grafner. For the reasons stated below, we affirm.

## BACKGROUND

Grafner began working for St. Bartholomew as a part-time musician on November 30, 2006. Grafner played music for two hours a week, which included choir rehearsal on Thursday nights and one mass on Sunday mornings. Grafner's last day of work was on January 7, 2007.

Grafner filed for unemployment compensation benefits (benefits) on January 7, 2007. Grafner alleged that she was entitled to benefits

because she was hired to work for the Parish during the Christmas season only, which ended with the mass of the Epiphany on January 7, 2007. St. Bartholomew took the position that Grafner voluntarily quit because she was not getting along with the choir and work as a musician remained available for Grafner.

The Department's claim adjudicator rendered a decision on July 11, 2007, regarding Grafner's benefits claim. The claim adjudicator held that Grafner was ineligible for benefits because she left work voluntarily without good cause attributable to the employer. The claim adjudicator determined that Grafner failed to exhaust reasonable alternatives to correct the situation before leaving her employment with the Parish.

Grafner filed an application for reconsideration of the claims adjudicator's determination on July 12, 2007. Grafner in her application for reconsideration stated in part:

"I told [the pastor] I was looking for full-time employment and would help out for those weeks ending at New Year's. He stated he had someone else who was the interim full-time person. I played for 1 mass on Sunday and Christmas Day 2—masses and 1 mass each Sunday in December. Also, the evening of November 30, 2006 the pastor informed the 7-people in the choir that I was just helping out and that he was going to interview other people and 'see what else is out there.' I had a conversation with the Pastor Rev. Jason and said I needed more work. Fr. Jason said that he was not going to interview and hire a full-time person until July 2007. Rev. Jason was also looking for a music director who could speak Spanish. I WAS NEVER INTERVIEWED, NEVER HIRED for the position. NEVER SUBMITTED A RESUME TO FR. JASON."

Grafner requested a hearing before an administrative law judge, also known as the hearing referee (Referee). A telephone hearing was conducted on August 12, 2007. During the hearing, an attorney represented Grafner. A nonattorney representative, Michael Johnson of NSN Employer Services, represented St. Bartholomew. At the beginning of the hearing, the Referee denied Grafner's motion requesting that St. Bartholomew's representative be prohibited from representing the employer because he was unauthorized to practice law.

The Referee identified the issue as "whether the claimant voluntarily left her job for reasons attributable to the employer." During the hearing, Grafner testified that her original agreement with the Parish was that she would stay through the Christmas season, which concluded on the Feast of the Three Kings Epiphany on January 7. Grafner stated that no contract existed with the Parish regarding her employment, and it was just part-time work to come in and help the full-time person.

At the end of Grafner's testimony, the Referee asked St. Bartholomew's representative whether he wanted to question Grafner or to proceed with the questioning of his witness. The representative did not question Grafner and the Referee then questioned Father Malave.

During his testimony, Father Malave stated that the Parish wanted to hire a part-time musician from November to the end of June, at which time the Parish would hire a full-time musician. Father Malave stated that his hope was to have someone from the end of November to the end of June to build consistency with the Parish's choir, the music program and for the people attending Sunday mass. Father Malave testified that no written agreement with Grafner regarding her employment duration existed. Grafner informed Father Malave in December that she was not feeling comfortable with the choir, that she was not enjoying her stay with the Parish and that she would be finishing up on January 7, 2007. Grafner told Father Malave that she did not feel connected, she did not feel like the choir appreciated her and she did not feel like she was successful with the choir.

Father Malave also testified that when Grafner started working, the Parish was looking for an interim director through June 30 and Grafner could have stayed employed until June 30. Father Malave stated that from the very first meeting the hope was that Grafner would have stayed through the end of June instead of having to find someone else to take over again and cause chaos with the choir.

St. Bartholomew's representative did not question Father Malave at this point.

Upon Grafner's attorney's questioning of Father Malave, he stated that he never wrote a letter asking Grafner or telling her that he expected her to stay until June 30. Father Malave also testified that a choir member informed him that Grafner was not a comfortable fit with the choir, and he responded that Grafner was in place until June 30. Father Malave stated that another part-time musician could have been called if Grafner was not hired, but the other part-time musician was not really an option. The Parish's representative then questioned Father Malave as to whether a written agreement existed that Grafner's employment would only last until January of 2007. Father Malave's response was no.

Following Father Malave's testimony, Grafner testified that she did not discuss with Father Malave that he wanted or expected her to stay until June 30, 2007. Grafner also testified that if she had been told that the Parish wanted her to stay after January 7, 2007, she would have formally interviewed for the position because she needed the work and money.

The Parish's representative then asked Grafner whether she told Father Malave that she wanted to leave because she was not getting along with the choir. Grafner responded no and that the original agreement was until January 7.

The Parish's representative did not make a closing remark. Father Malave, however, made closing remarks in which he stated that the Parish made it clear that it was looking for an interim person through the end of June.

Grafner's attorney responded that Father Malave indicated that three other people were interested in the interim musician position. Grafner's attorney claimed that Father Malave's testimony was not credible based on the fact that the choir was complaining about Grafner, and three other people were ready to take over for her, but the Parish would have still kept Grafner employed as the Parish's part-time musician until June 30.

On August 13, 2007, after hearing the testimony, the Referee ruled that Grafner was disqualified from receiving benefits. The Referee determined that Grafner left work at St. Bartholomew because she did not get along with the choir.

Grafner filed an appeal with the Board alleging that the Referee allowed the unauthorized practice of law and that the decision to deny benefits was against the manifest weight of the evidence and law. The Board affirmed the Referee's decision and stated in relevant part:

"Although the legislature cannot determine what constitutes the practice of law, the Court in *Perto* advised that the practice of law is not determined by the place (Industrial Commission) but by the complexity of the issues presented for review. In *Perto*, the court left open the question as to whether or not, in proceedings somewhere between the investigative stages and the courtroom, employers' agents are engaged in the practice of law. Certainly, the formality of court proceedings is not present in proceedings beyond the investigative stage. Benefit Rule 2720.250, Rules of Evidence, even state that the '[t]echnical rules of evidence do not apply to hearings before Referees. ***.' The representative of an entity before a Referee requires, therefore, specialized expertise but not necessarily a law degree. The matters before a Referee are not so complex that they are beyond the ken of an experienced representative specializing in issues arising under the Act."

Grafner timely filed a complaint in the trial court for administrative review. On July 10, 2008, the trial court entered an order denying Grafner's motion for judgment regarding the unauthorized practice of law finding that no unauthorized practice of law occurred during the hearing. The trial court also affirmed the Board's decision denying benefits finding that the decision was not against the manifest weight

of the evidence or contrary to law. Grafner timely appealed the trial court's ruling affirming the Board's findings.

In addition to the parties' briefs on appeal, the Illinois State Bar Association filed an *amicus curiae* brief in support of Grafner. The Society for Human Resource Management, the National Federation of Independent Business Small Business Legal Center, the Metropolitan Chicago Healthcare Council, the Association of Unemployment Tax Organizations, UWC—Strategic Services on Unemployment & Workers Compensation, the Illinois State Council for the Society for Human Resource Management and the Illinois Manufacturers' Association also filed an *amicus curiae* brief in support of St. Bartholomew. This court considered both *amici curiae* briefs.

## ANALYSIS

The Board is the trier of fact in evaluating unemployment benefits claims, and its findings of fact are considered *prima facie* true and correct. *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 771, 755 N.E.2d 93, 96 (2001). When reviewing the Board's factual findings, this court must determine whether the Board's findings are against the manifest weight of the evidence, which occurs when the opposite conclusion is clearly evident. *Acevedo*, 324 Ill. App. 3d at 771, 755 N.E.2d at 96. Even if an opposite conclusion may be reasonable or a court could reach a different conclusion on the same evidence, that is an insufficient basis to reverse a Board finding. *Acevedo*, 324 Ill. App. 3d at 772, 755 N.E.2d at 96; *Doyle v. Board of Review, Department of Labor*, 31 Ill. App. 3d 968, 970, 334 N.E.2d 776, 778 (1975). This court is not bound by the Board's decision addressing questions of law. *Hamm v. Township Officers of the Township of Bremen Electoral Board*, 389 Ill. App. 3d 827, 830-31, 907 N.E.2d 433, 436 (2009). Decisions of the Board entailing mixed questions of fact and law are reviewed adopting a "clearly erroneous" standard of review. *Hamm*, 389 Ill. App. 3d at 831-32, 907 N.E.2d at 437. A clearly erroneous standard "is significantly deferential to an agency's experience in construing and applying the statutes that it administers." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143, 849 N.E.2d 349, 358 (2006). A decision is "clearly erroneous" "if the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 282 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). This court agrees with the parties that the "clearly erroneous" standard of review must be adopted to decide whether the nonattorney representa-

tives engaged in the unauthorized practice of law. This court also agrees with the parties that the Board's decision denying Grafner unemployment benefits is reviewed using the manifest weight of the evidence standard.

Grafner first contends on appeal that St. Bartholomew's representative and Father Malave's participation in the hearing constituted the unauthorized practice of law rendering the entire proceeding a nullity. Grafner maintains that the Illinois Supreme Court bears the responsibility of regulating and defining the practice of law and it has not authorized nonattorneys to practice law before the Department. Grafner claims that since a nonattorney provided evidence, argued and made objections, the nonattorney engaged in the unauthorized practice of law. Grafner maintains that both the representative and Father Malave's activities before the Department constituted the unauthorized practice of law since the representative examined and cross-examined witnesses, and Father Malave made a statement on St. Bartholomew's behalf at the conclusion of the hearing.

State defendants respond that the benefit appeal process is an informal, fact-finding process that does not require legal representation. State defendants claim that the relevant test is whether "the activity requires legal knowledge and skill in order to apply legal principles and precedent." Adopting this standard, State defendants argue that a representative who provides factual data, or participates in simple, nontechnical proceedings, is not engaged in the unauthorized practice of law because only ordinary business intelligence is required and not skills peculiar to an individual trained and experienced in the law. State defendants claim that the representative's involvement in the hearing was limited to asking clarifying questions concerning the existence of a written agreement and whether Grafner told Father Malave that she did not get along with the choir. State defendants also claim that the Parish representative did not make any legal determination about the proper forum, appropriate cause of action, weight of the evidence, coordination of testimony, or application of the Act nor did the Parish representative undertake legal analysis, exercise independent legal judgment or make legal arguments. State defendants also claim that Father Malave's conduct falls within the corporate *pro se* exception because he appeared as the Parish's witness at an informal administrative fact-finding hearing, answered questions, reacted to an objection and made a fact-based closing statement. State defendants further claim that reversing the Department's decision would be unduly harsh.

The Illinois Supreme Court possesses the authority to regulate the practice of law. What constitutes the practice of law, however, cannot

be clearly defined. Although it is difficult to formulate a precise definition of what constitutes the "practice of law," a generally accepted definition of the term exists. *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256, 94 N.E.2d 148, 150 (1950). The "practice of law" has been defined as " 'the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' " *Barasch*, 406 Ill. at 256, 94 N.E.2d at 150, quoting *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 50, 87 N.E.2d 773, 776 (1949). Activities performed by an individual considered to be the "practice of law" include:

> "appearing in court or before tribunals representing one of the parties, counseling, advising such parties and preparing evidence, documents and pleadings to be presented. It has been defined as preparing documents the legal effect of which must be carefully determined according to law. It has been defined as referral to attorneys for service; advising or filling out of forms; negotiations with third parties and, in short, engaging in any activities which require the skill, knowledge, training and responsibility of an attorney." ISBA Op. No. 93—15, at 2 (March 1994), citing *Barasch*, 406 Ill. at 256, 94 N.E.2d at 150.

The Illinois Supreme Court has indicated that in deciding whether acts amount to the unauthorized practice of law, "it is the character of the acts themselves that determines the issue." *Chicago Bar Ass'n v. Quinlan & Tyson, Inc.*, 34 Ill. 2d 116, 120, 214 N.E.2d 771, 774 (1966). The Illinois Supreme Court has also indicated that "whether a defendant charges a fee for the act is not decisive of whether it is unauthorized practice." *King v. First Capital Financial Services Corp.*, 343 Ill. App. 3d 404, 407, 798 N.E.2d 118, 121 (2003), *aff'd*, 215 Ill. 2d 1, 828 N.E.2d 1155 (2005), citing *Quinlan & Tyson, Inc.*, 34 Ill. 2d at 120, 214 N.E.2d at 773.

Here, St. Bartholomew hired Johnson, the nonattorney representative, to represent it during the informal Department telephone hearing. During the hearing, Johnson's participation was limited to the following dialogue:

> "REFEREE: Okay, Mr. Johnson is there anything you'd like to ask Miss Grafner or would you rather go to your witness at this time sir?
>
> ER REP: We can go to my witness.
>
> \* \* \*
>
> REFEREE: Thank you Father. At this time Mr. Johnson do you have anything you want to ask the Father?
>
> ER REP: Not at this time, thank you Judge.

\* \* \*

REFEREE: Okay, any redirect Mr. Johnson, quickly.

ER REP: Father Malave?

MALAVE: Yes?

ER REP: Was there ever any written agreement between you and Miss Grafner that she . . . strike that. When you hired Miss Grafner on November . . . . did you two sign any type of written agreement that the employment would last only until January 7, 2007?

MALAVE: Absolutely not. That would've been completely outside of my hope for the Parish, the Choir's hope for the Parish.

\* \* \*

REFEREE: I agree, I understand Counselor. It's not a battle. We just have an oral agreement and the question is what was the duration of time, what was understood of the parties and what took place during the course of that association if you will. But just a yes or no would be helpful Father. Go ahead and restate the question Mr. Johnson.

ER REP: Father Malave?

MALAVE: Yes?

ER REP: When you hired Miss Grafner did you have any type of written agreement that her employment would only last until January of 2007?

MALAVE: No.

ER REP: Okay and when she left on January 7, 2007; did work remain available?

MALAVE: Absolutely.

ER REP: Nothing further, thank you.

\* \* \*

REFEREE: Alright, any re-cross Mr. Johnson or can we move to close please?

ER REP: Quickly very quickly.

REFEREE: Ugh!!!!

ER REP: Miss Grafner?

CL[AIMANT GRAFNER]: Yes?

ER REP: Did you ever tell the Father that you wanted to leave because you weren't getting along with the choir?

CL[AIMANT GRAFNER]: No, the original agreement was the 7th.

ER REP: That was all that I wanted to ask the witness, was that one question.

REFEREE: Alright, anything further Mr. Johnson?

ER REP: No thank you.

\* \* \*

REFEREE: Okay. Thank you. Mr. Johnson anything by way of closing sir?

ER REP: We'll rest on the record, thank you."

Grafner does not claim that Johnson drafted pleadings on St. Bartholomew's behalf or initiated any proceedings on the Parish's behalf. See *Edwards v. City of Henry*, 385 Ill. App. 3d 1026 (2008). There are also no claims that Johnson entered into negotiations with Grafner on St. Bartholomew's behalf nor has Grafner specified what evidence Johnson presented during the hearing. Grafner contends that Johnson questioned witnesses and made tactical decisions during the hearing reflecting the type of decisions attorneys make during legal proceedings. The nonattorney representative, however, did not have preformulated questions that he asked the parties nor did his participation during the hearing rise to the level of involving tactical, strategy based decisions. The nonattorney representative merely asked fact-clarifying, follow-up questions. Also, based on the dialogue above, the nonattorney representative did not provide advice to Father Malave during the telephone hearing nor did the service rendered to St. Bartholomew during the hearing require use of legal knowledge or skill.

Both parties cite to *Perto v. Board of Review*, 274 Ill. App. 3d 485, 493, 654 N.E.2d 232, 238 (1995), which addresses what actions performed by a nonattorney representative constitutes the unauthorized practice of law in a matter involving a request for unemployment benefits. This court in *Perto* adopted the principle articulated in *People ex rel. Chicago Bar Ass'n v. Goodman*, 366 Ill. 346, 357, 8 N.E.2d 941, 944 (1937), that it was "the character of the act done, and not the place it was done, that was the decisive factor in determining whether it constituted the practice of law." *Perto*, 274 Ill. App. 3d at 494, 654 N.E.2d at 239. The *Perto* court concluded that an employer's nonattorney representative who responded to a Department form letter, sent the Department a letter requesting a rehearing and detailed the employer's position in a letter with facts did not engage in the unauthorized practice of law. *Perto*, 274 Ill. App. 3d at 493, 654 N.E.2d at 238. The *Perto* court concluded that the employer's nonattorney representative's "acts were simple, fact-based responses to determinations that plaintiff was eligible for unemployment benefits by the Department." *Perto*, 274 Ill. App. 3d at 494, 654 N.E.2d at 239. The nonattorney representative in *Perto* did not participate in the hearing before the Referee. *Perto*, 274 Ill. App. 3d at 494, 654 N.E.2d at 239. This fact does not distinguish *Perto* from the instant case because the acts performed by the nonattorney representative in both cases required no legal knowledge or skill and were instead simple, fact-

based inquiries or responses. In *Perto*, the nonattorney representative disagreed with the Department's determinations and presented a factual basis for the disagreement. *Perto*, 274 Ill. App. 3d at 495, 654 N.E.2d at 239. In the instant case, the nonattorney representative asked three fact-clarifying questions, but did not independently offer any factual or legal information.

Simplicity and informality are the intended features of unemployment compensation hearings. Here, all of the parties in the hearing participated via telephone. The nonattorney representative did not present case or statutory support for the employer's position and did not offer closing remarks. The representative's fact-clarifying questions were not of the nature requiring complex legal analysis but the type of questions that would have been asked by someone with experience representing employers. Moreover, the rules of evidence governing trial procedures are inapplicable to the hearing. Evaluating the character of the acts performed here by the nonattorney representative Johnson, a lawyer's training for their proper performance was not required and the nature of the hearing was not akin to the formality of proceedings occurring in a court of law.

We acknowledge that decisions outside this state are not binding authority, but we may nevertheless consider such decisions as persuasive authority. We find instructive the well-reasoned case of *Harkness v. Unemployment Compensation Board of Review*, 591 Pa. 543, 920 A.2d 162 (2007), which addresses the same issue presented here. In *Harkness*, the Pennsylvania Supreme Court held that "a nonlawyer representative representing an employer in unemployment compensation proceedings before a referee is not engaging in the practice of law and that the Unemployment Compensation Law permits such representation." *Harkness*, 591 Pa. at 558, 920 A.2d at 171. In reaching its decision in *Harkness*, the Pennsylvania Supreme Court cited this court's earlier decision in *Perto* as support for its conclusion that a nonattorney representative may participate in proceedings before the Board's Referee. *Harkness*, 591 Pa. at 554, 920 A.2d at 169.

The Pennsylvania Supreme Court in *Harkness* raised the same public interest issues which concern this court regarding what constitutes the practice of law. The *Harkness* court recognized that the court must balance its concern for the protection of the public against its concern of "ensuring that the regulation of the practice of law is not so strict that the public good suffers." *Harkness*, 591 Pa. at 551, 920 A.2d at 167. We agree with the *Harkness* court that "the activities performed by an employer representative in an unemploy-

ment compensation proceeding are largely routine and primarily focus upon creating a factual basis on which a referee will award or deny unemployment compensation benefits." *Harkness*, 591 Pa. at 552, 920 A.2d at 168.

Similar to the instant case, the employer in *Harkness* was represented by a nonattorney employee of a company "that is in the business of representing companies in unemployment compensation matters." *Harkness*, 591 Pa. at 547, 920 A.2d at 164. The Pennsylvania Supreme Court stated that the purpose of a representative's presence "is not to engage in the analysis of complex and intricate legal problems, but rather as an adjunct to the employer (or claimant) in offering their respective viewpoints concerning the events at issue." *Harkness*, 591 Pa. at 552, 920 A.2d at 168. The *Harkness* court recognized that "the unemployment compensation system must operate quickly, simply, and efficiently," and that the proceedings are brief and informal in nature. *Harkness*, 591 Pa. at 553, 920 A.2d at 168. We agree with the *Harkness* court's recognition that unemployment benefit claims are not intended to be intensely litigated nor are the hearings considered trials taking place in a court of law. This court, as did the *Harkness* court, recognizes that minimal amounts are typically in controversy. *Harkness*, 591 Pa. at 553, 920 A.2d at 168. As stated by the *Harkness* court, "[r]equiring employers to be represented by counsel will not only undermine the informal, speedy and low cost nature of these proceedings, it may dissuade many employers from defending claims for benefits leading to the possibility of an unwarranted drain on the system." *Harkness*, 591 Pa. at 553, 920 A.2d at 168. The *Harkness* court succinctly concluded that a nonattorney's representation before a Referee during a benefit hearing does not amount to the unauthorized practice of law. In reaching that conclusion, the court articulated its reasoning by stating in part:

"[T]he character of the activities performed by representatives at unemployment hearings coupled with the informal nature of these proceedings, the minimal amounts at issue, and the long history of participation by non-lawyer representatives suggest that the public does not need the protection that serves as the basis for classifying certain activities to constitute the practice of law and that indeed, finding non-lawyer representatives to be engaging in the practice of law by acting in unemployment compensation proceedings would impose an unnecessary burden on the public." *Harkness*, 591 Pa. at 553-54, 920 A.2d at 168-69.

We are not concluding that a nonattorney representative's actions during an unemployment compensation hearing may never be considered the unauthorized practice of law, but given the circumstances of the instant case, no unauthorized practice of law occurred

during the hearing.[1] St. Bartholomew's nonattorney representative limited his participation during the hearing to asking simple, fact-clarifying questions, which did not require legal analysis. Additionally, Father Malave had direct knowledge of the facts concerning Grafner's employment and voluntary termination of that employment. As such, Father Malave testified as a witness on behalf of St. Bartholomew and provided information supporting the Parish's position by offering closing remarks. Father Malave's actions are consistent with actions undertaken by a witness during unemployment proceedings on behalf of his employer and do not amount to the unauthorized practice of law. Thus, based on the entirety of the record, this court is not left with a definite and firm conviction that the Board erred in concluding that the nonattorney representatives did not engage in the unauthorized practice of law.

We must still consider the statutory language at issue here. Section 806 of the Act expressly states that an entity "may be represented by a union or any duly authorized agent." 820 ILCS 405/806 (West 2004). When interpreting statutory language, "[w]e must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous." *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232, 756 N.E.2d 822, 827 (2001). The legislature when drafting section 806 of the Act expressly included the terms "union" and "duly authorized agent" and chose to exclude the term "attorney" from the statute. A union's representation of an individual or entity in an administrative hearing does not equate to nor does it presume that a party would receive attorney representation at the hearing as a union may not necessarily employ attorneys. If the legislature intended to require attorney representation, then neither the term "union" nor "duly authorized agent" would have been included in the statute. Presuming *arguendo* that we were to adopt a holding requiring attorney representation at administrative hearings, that holding would not only be inconsistent with the legislature's intent in drafting section 806 of the Act, but would render the statute meaningless. Moreover, the statute is not authorizing a "union" or "duly authorized agent" to engage in the practice of law. The statute instead limits representation to "any proceeding before the Director or his representative, or the Referee or the Board of Review." 820 ILCS 405/806 (West 2004). Thus, the representation by a

---

[1]On July 24, 2009, the fifth division in *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814 (2009), decided an issue similar to the issue in this case. The holding in that case is consistent with our holding here.

"union or any duly authorized agent" is limited to administrative hearings and does not extend to courts of law. Therefore, the statutory language of section 806 of the Act further supports this court's holding that under the facts of the instant case, St. Bartholomew's nonattorney's representation during the administrative hearing was not improper. Accordingly, the Board did not err in finding that no unauthorized practice of law occurred during the administrative hearing. As such, this court cannot declare void the Board's judgment.

■ Grafner's other contention on appeal is that the Board's decision is against the manifest weight of the evidence and law. Grafner testified that St. Bartholomew hired her to work only until the end of the Christmas season, which was through January 7, 2007. Grafner claims that Father Malave never testified that an agreement existed but only that he "hoped" that Grafner would remain an employee through June 30, 2007. Grafner also claims that Father Malave's testimony is not credible because even though choir members complained about her, Father Malave still wanted to employ her through the end of June. On the other hand, Grafner maintains that her testimony was credible because a parish would likely hire temporary part-time help during the Christmas season when there are additional masses. Grafner claims that since no evidence exists supporting the finding that there was an agreement between the parties that Grafner would work until June 30, 2007, the Board's decision requires reversal.

State defendants respond that the parties presented opposing versions of the events, and the Referee rejected Grafner's version. The Board bears the responsibility of making credibility determinations and determined that Father Malave was more credible than Grafner. State defendants claim that Father Malave consistently testified that he and Grafner had an oral agreement that she would work through the end of June 2007. State defendants claim that Father Malave's testimony supports the Board's finding that Grafner left her job prematurely.

The Act was created "to benefit individuals who are not at fault for their unemployment." *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671, 875 N.E.2d 1154, 1157 (2007). The claimant seeking benefits under the Act bears the burden of establishing eligibility for unemployment insurance benefits. *White*, 376 Ill. App. 3d at 671, 875 N.E.2d at 1157. Grafner is seeking benefits under Section 601(A) of the Act, which states:

> "An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become

reemployed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks which are either for services in employment, or have or will be reported pursuant to the provisions of the Federal Insurance Contributions Act by each employing unit for which such services are performed and which submits a statement certifying to that fact." 820 ILCS 405/601(A) (West 2004).

The term "good cause" for purposes of leaving employment is defined as "that which justifies an employee to leave the ranks of the employed and join those of the unemployed." *Acevedo*, 324 Ill. App. 3d at 772, 755 N.E.2d at 96.

Here, the Board's decision in the Parish's favor to deny benefits was based on Grafner's knowledge that Father Malave would hire a musician in July in combination with the fact that Grafner stayed with the Parish long enough to requalify for benefits. Father Malave presented testimony that the Parish wanted to hire an individual who would work not only through the Christmas season, but also through June 30 to build consistency and continuity with the choir and the Parish's parishioners. The Board is charged with the responsibility of assessing the parties' credibility, and in the instant case, the Board found Father Malave more credible. This finding was not against the manifest weight of the evidence. Grafner failed to meet her burden of establishing her eligibility for unemployment benefits because she did not establish that she was not at fault for her unemployment. Thus, the Board did not err in denying benefits to Grafner.

Accordingly, the judgment of the trial court affirming the Board's decision is affirmed.

Affirmed.

STEELE, J., concurs.

JUSTICE O'BRIEN, specially concurring in part:

While I agree with the outcome, I disagree with the analysis of the learned majority.

This is the unauthorized practice of law, but reversing the judgment is not the appropriate remedy. The remedy is more appropriately with the General Assembly or the supreme court. Accordingly, I specially concur only in the outcome.